[No. 6276. Decided December 15, 1906.]

GEORGE FOWLER, *Respondent*, v. KATIE OHNICK *et al.*,
*Appellants.*[1]

FORCIBLE ENTRY AND DETAINER—EVIDENCE—SUFFICIENCY. In an
action of forcible entry and detainer, no other verdict than one for
the plaintiff could be allowed to stand, where the evidence shows
that there was a discrepancy between the lines of a platted addition
and the stakes on the ground, that the plaintiff purchased a lot ac-
cording to the plat, built a bulkhead thereon and used the portion in
question the same as he did other portions of the lot, at all times
claiming title thereto, and maintained peaceable possession thereof
for over six years, until the adjoining owner built a fence thereon,
against his protest and forcibly prevented the removal thereof.

Appeal from a judgment of the superior court for King
county, Morris, J., entered February 23, 1906, upon the ver-
dict of a jury rendered in favor of the plaintiff, in an action
of forcible entry and detainer. Affirmed.

*Robert F. Booth* and *Walter A. Keene*, for appellants.

*Graves, Palmer & Murphy*, for respondent.

RUDKIN, J.—This was an action of forcible entry and de-
tainer. There is no substantial controversy over the material
facts, which are as follows: Mercer's Addition to North Se-
attle was surveyed and a plat thereof filed in the office of the

[1]Reported in 87 Pac. 1050.

county auditor of King county in the month of January, 1882. A few days after the survey was made and the plat recorded, it was discovered that the addition, as staked off on the ground, and as shown on the official plat, was about eight feet farther south than the parties intended. The stakes were thereupon moved about eight feet to the north, but no corresponding change was made in the plat as recorded. As a result, the lots in the addition, as shown on the official plat, are eight feet south of the lots as staked off on the ground. In other words, the south line of lot 5 of block 10 (being the lot in controversy here), is eight feet south of the north line of lot 6 (immediately to the south of lot 5) as staked out on the ground.

In the year 1888 the plaintiff, Fowler, purchased lot 5, of block 10, according to the recorded plat. In 1891 he built a residence on the easterly portion of the lot, and constructed a wooden bulkhead on the east end and southerly side of the lot as shown on the plat. This bulkhead consisted of 6x6 cedar posts, placed in the ground about eight feet apart, to which were spiked two-inch planks. The bulkhead was about five feet high at the southeast corner of the lot, and came to the surface on the south side of the lot about 80 feet from the corner. The lot was graded, and the plaintiff maintained cesspools on the portion of the lot in controversy here for a number of years until connection was made with the sewer. After this the cesspools were filled with ashes, and brick, lumber, and material of various kinds were deposited on the disputed tract from time to time, the same being used about the same as other portions of the lot.

In 1891 or 1892 the plaintiff had a conversation with J. F. Peterson, who then owned lot 6, and was asked if he did not think that the bulkhead was over the line on lot 6. The plaintiff replied that he did not. Peterson remarked that he was thinking of building on the lot and would have a survey made to ascertain where the line was. To this the plaintiff replied:

"If you find that I have got any of your ground you shall have it, but you will find I have not." In 1903 W. A. Mc-Cutcheon purchased lot 6, and as soon as he discovered that the plaintiff claimed the northerly eight feet of the lot, he surrendered the property to his grantors, and they refunded the purchase money to him.

In September, 1904, when the defendants purchased lot 6, they were advised of the plaintiff's claim to the northerly eight feet of the lot, and their grantors refused to give a warranty deed to that part of the lot. A warranty deed was given for the southerly fifty-two feet and a quitclaim for the northerly eight feet. The defendants built on lot 6 during the winter of 1904 and 1905, and the contractor, by permission of the plaintiff, stored his material on lot 5, including the tract in dispute. The defendants moved into the house in February, 1905, and this was the first time lot 6 was ever occupied.

The plaintiff is a widower, living alone, and was absent from home except at nights. The first act of dominion ever asserted over the disputed tract by the defendants, to the knowledge of the plaintiff, was about June 1, 1905, when they removed several yards of earth therefrom. The plaintiff immediately protested by letter, and later had a conference with one of defendants and his attorney, at which they requested the plaintiff to sue for trespass. In the latter part of June, 1905, the plaintiff saw some fencing material on the ground, and supposing that the defendants intended to enclose the disputed tract, asked what they proposed to do, and was informed that they intended to build a fence along the north line of the tract. The plaintiff informed them that he owned the land and forbade them to build the fence. Soon after this, plaintiff returned home in the evening and found posts set along the north line of the disputed tract, and wire stretched upon them. The next morning he removed some of the wire and attempted to remove the posts, but found

that a board had been nailed across the bottom.  He then got
an ax and attempted to split the posts, but one of the de-
fendants came out with an ax or hatchet, and placed it on
top of the post so that the plaintiff could not strike it.  A
scuffle ensued in which the defendant took the plaintiff's ax
from him, threw the plaintiff down and held him, stating that
he would let him up if he promised to let the fence alone.
This action was commenced immediately thereafter.  The jury
returned a verdict in favor of the plaintiff, without damages,
upon which a judgment was entered.  From this judgment
the defendants have appealed.

The only errors assigned are in the giving of instructions,
and in the refusal to give certain instructions requested by
the appellants.  It must be conceded that the charge of the
court as a whole has but little application to a statutory ac-
tion of this kind.  Much of the charge is devoted to the ques-
tion of title by adverse possession, a question wholly foreign
to the issues in this case.  The jury were informed that the
respondent might recover if he was in possession of the prem-
ises up to five days next before the commission of the unlaw-
ful acts complained of, but the charge was entirely silent on
the question as to what would constitute a forcible entry or
a forcible detainer on the part of the appellants.  It is
earnestly urged on behalf of the respondent that no sufficient
exceptions were taken, either to the charge of the court or to
the refusals to charge as requested; but in view of the con-
clusion we have reached on the facts, this question becomes
immaterial.

As already stated, there is no substantial conflict in the
testimony.  Many of the facts detailed above are established
by the appellants' witnesses.  We think it clearly appears,
that the respondent was, at the time of the entry of the appel-
lants, and for a number of years had been, in the peaceful
and undisturbed possession of the disputed tract, exercising
power and dominion over it to the exclusion of all others;

that the appellants were guilty of the forcible entry and forcible detainer as alleged, and that no other verdict than that returned by the jury should be permitted to stand.

The judgment of the court below should therefore be affirmed, and it is so ordered.

MOUNT, C. J., FULLERTON, HADLEY, DUNBAR, and CROW, JJ., concur.